UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOHN TROUTNER,          ) | |
| ) | |
| Plaintiff,          ) | |
| ) | |
| v.          ) | CAUSE NO.:  2:05-CV-40-PRC |
| ) | |
| MARTEN TRANSPORT, LTD.,          ) | |
| ) | |
| Defendant.          ) | |

**OPINION and ORDER**

This matter is before the Court on Defendant's Motion To Bar The Testimony Of James Brusso [DE 53], filed by the Defendant, Marten Transport, Ltd., on September 18, 2006.  On October 2, 2006, the Plaintiff filed his Brief In Objection And Response To Defendant's Motion In Limine To Bar The Testimony of James Brusso.[1]  On October 9, 2006, the Defendant filed its Reply In Support of Motion To Bar The Testimony Of James Brusso.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Plaintiff, John Troutner, was an independent contractor who drove trucks for Defendant Marten Transport.  On or about June 27, 2003, the Plaintiff picked up a load of cherries in the State of Washington.  At the time the Plaintiff picked up the load, he inspected the trailer.  On June 30, 2003, the Plaintiff was driving the semi-truck trailer through Indiana outside Chicago.  The Plaintiff parked the semi-truck trailer in order to redistribute the cherries.  The

---

[1]The Plaintiff originally filed his Brief In Objection And Response To Defendant's Motion In Limine To Bar The Testimony Of James Brusso [DE 65] on October 2, 2006.  On the same day, the Plaintiff filed another Brief In Objection And Response To Defendant's Motion In Limine To Bar The Testimony Of James Brusso [DE 66].  Finally, on October 3, 2006, the Plaintiff filed the instant Objection and Response [DE 67].  While the three responses appear, on their face, to be substantially similar to one another and perhaps identical, the Court will consider the latest in time, i.e., docket entry 67, to be the proper response to the Defendant's Motion.

Plaintiff entered the trailer without incident. As he exited the trailer, the Plaintiff placed his left hand on a handle or grab bar (hereinafter, "grab bar"), which was attached to the rear door of the trailer, and stepped down with his left foot. The grab bar gave way and the Plaintiff fell backwards and landed on the ground. The Plaintiff alleges to have sustained a head injury.

On December 28, 2004, the Plaintiff filed his Complaint in Porter County Superior Court against Great Dane Limited Partnership, d/b/a Great Dane, and Marten Transport, alleging that the Defendants placed a trailer with a grab bar into the stream of commerce in a defective and unreasonably dangerous condition that provided the proximate cause of the Plaintiff's injuries. Defendant Great Dane was the manufacturer and seller of the trailer. Defendant Marten Transport owned, operated, and maintained the trailer. On February 2, 2005, Defendant Marten Transport removed the case to this Court. On March 28, 2005, the Plaintiff amended his Complaint to add Defendant Polar Hardware Manufacturing Company, Inc., the manufacturer and supplier of the grab bar. On October 5, 2006, the Court granted Summary Judgment in favor of Defendants Great Dane and Polar Hardware.

In its instant Motion, Defendant Marten Transport requests on order from the Court excluding testimony from the Plaintiff's proposed expert, James Brusso. The Defendant proffers three arguments as to why Brusso's opinions regarding the failure of the grab bar and the Plaintiff's injuries are unreliable and thus should be excluded: (1) Brusso failed to properly consider and rule out viable alternative explanations such as inadequate design of the fastening system and/or improper installation; (2) Brusso failed to perform adequate tests before reaching his conclusions, such as destructive testing; and (3) Brusso's opinions amount to nothing more than "common sense evaluations that provide no value to the jury."

2

In response, the Plaintiff argues that (1) Brusso's expert opinion supports inadequate maintenance as the cause of the failure, "to the exclusion of other causes"; (2) although additional testing could lead him to an even more definite conclusion, Brusso's peer-reviewed testing indicated inadequate maintenance, to a reasonable degree of engineering certainty; and (3) Brusso relied on his expert training, experience, and testing in order to "boil down" his opinions and conclusions into language understandable to a jury.  Finally, the Plaintiff argues that even if the Court grants the Defendant's Motion and excludes Brusso from testifying as an expert, an order on a motion *in limine* is temporary and subject to change.  Further, the Plaintiff argues, "timely objections at trial would appear to be the appropriate remedy" for the Defendant here.

## STANDARD

The admissibility of expert evidence is governed by Federal Rule of Evidence 702 as interpreted by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny.  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, *and* (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702 (emphasis added).  Here, the Defendant's proposed expert's qualifications in the field of metallurgical engineering are not at issue.

The admissibility of expert testimony--whether based on "scientific," "technical," or "other specialized" knowledge--is governed by the Supreme Court's general holding in *Daubert*,

which requires the district court to exercise a "gatekeeping" function to ensure that such testimony is both reliable and relevant. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999); *see generally Daubert*, 509 U.S. at 589-92; *see also Naeem v. McKesson Drug Co.*, 444 F.3d 593, 607 (7th Cir.2006).  The fundamental purpose of this gate-keeping requirement "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire*, 526 U.S. at 152.  In considering *Daubert* and *Kumho Tire*, the Seventh Circuit has endorsed a two-step analysis for the district courts to use in evaluating expert testimony under Rule 702: first, the court must determine whether the expert's testimony is "reliable," and second, the court must determine whether the expert's testimony is "relevant."  *See, e.g., United States v. Hall*, 165 F.3d 1095, 1101-02 (7th Cir.1999); *Cummins v. Lyle Industries*, 93 F.3d 362, 367 (7th Cir.1996); *Deimer*, 58 F.3d at 344; *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 614-16 (7th Cir.1993); *accord Kumho Tire*, 526 U.S. at 141.

Here, while neither the Defendant, as the movant, nor the Plaintiff, even raise the issue of relevance, the Court nevertheless finds that Brusso's opinions are relevant.  Therefore, only the reliability prong is at issue here.

For an expert opinion to satisfy the reliability requirement, the expert must be qualified in the relevant field and the expert's opinion must be based on sound scientific or other relevant methodology. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).  The hallmark of this reliability prong is the scientific method, i.e., the generation of testable hypotheses that are then subjected to the real world crucible of experimentation, falsification/validation, and replication.

4

*Caraker v. Sandoz Pharmaceuticals Corp.*, 188 F.Supp.2d 1026, 1030 (S.D. Ill. 2001) (citing *Daubert*, 509 U.S. at 593). In *Daubert*, the Supreme Court set forth the familiar non-exclusive, non-dispositive checklist for trial courts to use in assessing the reliability of scientific expert testimony, including: (1) whether the opinion can be or has been tested, (2) whether the opinion has been subjected to peer review and publication, (3) any known or potential rate of error of the methodology employed, and (4) the degree of general acceptance of the opinion or its methodology within the relevant field. *Daubert*, 509 U.S. at 593-94; *see also* Fed.R.Evid. advisory committee notes (2000 Amendments). The advisory committee notes to Rule 702 provide additional factors, along with the *Daubert* list, for a court to consider, including, but not limited to, "[w]hether the expert has adequately accounted for obvious alternative explanations." Fed.R.Evid. 702 advisory committee notes (2000 Amendments) (citations omitted). In *Kumho Tire*, the Court articulated that strict adherence to the factors was not necessary; rather, the factors are examples of criteria that a trial court may use to determine whether the expert, in offering the opinion, acted as would an expert in the field. *Kumho Tire*, 526 U.S. at 151-52. As a result, "the Daubert framework is a flexible one that must be adapted to the particular circumstances of the case and the type of testimony being proffered." *Mihailovich v. Laatsch*, 359 F.3d 892, 919 (7th Cir. 2004). Ultimately, the object of the court's Rule 702 reliability inquiry is to ensure that the opinions expressed by testifying experts "adhere to the same standards of intellectual rigor that are demanded in their professional work." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996).

Finally, the Court notes that "[a] review of caselaw [sic] after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." Fed.R.Evid. 702 advisory

committee notes (2000 Amendments).  Further, the District Court possesses "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at 152.  Further, "the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination."  *Comer v. American Elec. Power*, 63 F.Supp.2d 927, 933 (N.D. Ind. 1999) (quoting *Kumho Tire*, 526 U.S. at 142 (citing *General Electric Co. v. Joiner*, 522 U.S. 136, 143 (1997))).

The Court will discuss each of the Defendant's three proffered arguments in support of the exclusion of Brusso in more detail and in turn.

**ANALYSIS**

*1. Alternative explanations*

First, the Defendant argues that Brusso's opinions regarding grab bar failure and the Plaintiff's injuries are unreliable because Brusso failed to properly consider and rule out viable alternative explanations.  In particular, the Defendant notes that Brusso identified three (3) potential root causes for the failure of the grab bar and the Plaintiff's injuries: (1) inadequate design of the fastening system, (2) improper installation, and (3) inadequate maintenance.  According to the Defendant, "Brusso did not consider or rule out any of these alternative explanations before reaching his conclusion."  In support of this statement, the Defendant notes that Brusso did not review any of the Defendant's maintenance records and "knew nothing of [Defendant] Marten's maintenance procedures."  Therefore, it is unclear whether, and if so how, Brusso ruled out inadequate maintenance as potential root cause of the incident.  Therefore, the

6

Defendant asserts, Brusso relied on his experience and training as opposed to scientific methodology in violation of Rule 702 and case law.

In response, the Plaintiff briefly asserts that "Brusso states in his report and in his [d]eposition that inadequate maintenance led to the failure." The Plaintiff recounts Brusso's opinion noting that inadequate maintenance was the root cause of the failure, to the exclusion of the other causes.[2]

Before addressing the merits of the parties' arguments and the applicable case law, the Court first looks to Brusso's written report and deposition testimony. In discussing the results of his visual inspection and examination of the grab bar, Brusso's written opinion reads as follows:

> Possible root causes for the failure of the grab bar assembly and the injury to Mr. Troutner include: 1) inadequate design of the fastening system; 2) improper installation; and 3) inadequate maintenance. Based on the failure mode, the time of acceptable service, and the ease with which the grab bar separated from the trailer door, the most likely root cause of the failure and injury to Mr. Troutner is inadequate maintenance.

Def. Mot., Ex. C, at 5. Based on the above, it appears to the Court that Brusso explicitly not only considered but, in fact, ruled out viable alternative explanations for the failure of the grab bar in the process of concluding that "the most likely root cause of the failure and injury to Mr. Troutner is inadequate maintenance." However, at his deposition, subsequent to his written report, Brusso testified that he could neither rule in nor rule out design of the fastening system or improper installation as possible causes for the failure of the grab bar.[3]

---

[2]The Plaintiff's responds to the Defendant's alternative explanations argument in conjunction with the Plaintiff's response to the Defendant's inadequate testing argument. *See* Pl. Resp., at 5.

[3]"Q[uestion]: "Okay. So based on the fact that you did not do any assessment yourself [as to the design of the fastening system], is it correct that you could not rule it in or rule it out as a cause?

7

As a threshold matter, the Court notes that the apparent discrepancy between Brusso's written report and deposition testimony does not, standing alone, render him unreliable as an expert witness. In fact, conflicts and inconsistencies in expert testimony concerning conclusions drawn by the expert, as long as the expert otherwise meets the requirements of Rule 702 and *Daubert*, i.e., based on generally accepted and reliable scientific principle, goes to the weight and credibility of the expert's testimony as opposed to its admissibility. *See Smith v. Uniroyal, Inc.*, 420 F.2d 438, 442 (7th Cir. 1970) (providing that any inconsistencies in testimony of expert witness was matter to be considered by jury).

Despite the apparent discrepancy between Brusso's written report and his deposition testimony as to whether he considered and ruled out viable alternative explanations for the failure of the grab bar, the Court finds that Brusso "adequately accounted for obvious alternative explanations." In support of its alternative explanations argument, the Defendant initially cites the language in the advisory committee notes to Rule 702, which provides that, in addition to the *Daubert* factors, courts may consider "[w]hether the expert has adequately accounted for obvious alternative explanations" when determining whether expert testimony is sufficiently reliable to be considered by the trier of fact. Fed.R.Evid. 702 advisory committee notes (2000 Amendments) (citations omitted). The Defendant then relies on *Clark v. Takata Corp.*, 192 F.3d 750 (7th Cir. 1999), in which a motorist claimed injuries as a result of an accident and an alleged faulty seat belt. The Court in *Clark* affirmed the exclusion of the Plaintiff's expert finding that the expert relied on experience and training as opposed to any scientific methodology. *Clark*,

---

A[nswer]: Correct." Def. Mot., Ex. B, p. 102:14-20.
"Q[uestion]: "Okay. So am I correct that you cannot rule out improper installation as a cause?
A[nswer]: Correct." Def. Mot., Ex. B, p. 103:2-4.

192 F.3d at 757-59.  Therefore, according to the Defendant, based on *Clark*, the Court should bar Brusso's opinions for his failure to properly consider and rule in or rule out viable alternative explanations for the failure of the grab bar.

The Court finds the Defendant's argument to be unpersuasive.  *Clark* makes no mention of "obvious alternative explanations" as a factor in consideration of an expert's reliability.  In addition, and irrespective of the holding in *Clark*, "[the alternative explanations] requirement cannot be carried to a quixotic extreme."  *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 693 (8th Cir. 2001).  In other words, an expert's conclusion should not be excluded because "he or she has failed to rule out *every* possible alternative cause."  *Id.* (citations omitted) (emphasis in original); *see also Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 1999) (citing *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 156 (3d Cir. 1999) (same).  Moreover, the alternative explanations argument "affect[s] the weight that the jury should give the expert's testimony and not the admissibility of that testimony", *Westberry*, 178 F.3d at 265 (quoting *Heller*, 167 F.3d at 157), unless the expert can offer "no explanation" as to why he concluded an alternative cause was not the sole cause, *id.* (quoting *Heller*, 167 F.3d at 156).  Here, it appears to the Court that Brusso's written expert opinion "adequately accounted for" possible alternative explanations by taking the other potential causes (inadequate design of the fastening system and improper installation) under consideration and drawing the conclusion that inadequate maintenance was "the most likely root cause of the failure and injury to Mr. Troutner."[4]

---

[4]The Court notes that certain testimony from Brusso's deposition may contradict his conclusion as to the "root cause" of the failure of the grab bar, but, as the Court previously noted, this is an issue for a jury to weigh at trial.

*2. Inadequate testing*

Second, the Defendant argues that Brusso's opinions regarding the cause of the grab bar failure and the Plaintiff's injuries are unreliable because Brusso failed to perform adequate tests before drawing his conclusion. In support, the Defendant cites a passage from Brusso's deposition, in which he states that he conducted a "nondestructive evaluation only" and not any "destructive testing." Def. Mot., Ex. B, pp. 39:20-40:5. The Defendant also cites Brusso's written report, in which he states the following regarding destructive testing:

> Also, it is recommended that destructive evaluations be performed to determine the conditions of the threaded inserts used to secure the upper and lower ends of the grab bar. Destructive testing, including a comparison of the incident threaded inserts with exemplars from the same trailer door, is necessary to determine the root cause of the failure with more certainty.

Def. Mot., Ex. C., at 5. In addition, the Defendant also asserts that Brusso did not rely on any peer-reviewed authoritative articles: "Q[uestion]: And my question is, did you review or rely upon any peer-reviewed authoritative articles in connection with your work in this matter? A[nswer]: Not in this particular case. It's based on experiences and my education." Def. Mot., Ex. B, p. 68:4-8. Therefore, because Brusso performed only "a visual inspection and no scientific testing", according to the Defendant, Brusso's conclusions are unreliable.

The Plaintiff responds that the Defendant misrepresents Brusso's opinion by insisting that he solely relied upon experience and training. On the contrary, the Plaintiff asserts that Brusso relied on scientific testing and, irrespective of that, the *Daubert* factors are not a definitive checklist and the District Court's inquiry is a flexible one.

In support of its inadequate testing argument, the Defendant, once again, relies on *Clark*. In *Clark*, the Plaintiff's expert's testimony boiled down to two opinions: (1) the lap belt

unbuckled during the rollover sequence; and (2) a properly functioning lap belt would have prevented the Plaintiff from moving upward four (4) inches and striking the roof of his vehicle. The Seventh Circuit affirmed the exclusion of both of the Plaintiff's expert's opinions finding that "[w]here the proffered expert offers nothing more than a 'bottom line' conclusion, he does not assist the trier of fact." *Clark*, 192 F.3d at 759 (citations omitted). The Court reasoned that the expert's opinion with regarding to the proper functioning of the lap belt was "based solely on his belief and assumption without any scientific testing data or supporting research material in the record." *Id.* at 758.

The Court finds that the facts of the *Clark* case are distinguishable from the instant case. In *Clark*, the Court relied on the fact that the expert "conducted absolutely no scientific tests" but instead merely based his opinion on experience and training. *Id.* However, in the instant case, while it appears to the Court that Brusso relied on his experience and training, he also applied scientific methodology in his inspection of the trailer door and visual examination of the failed grab bar, i.e., a nondestructive evaluation.

In fact, the main crux of the Defendant's Motion is not based on the fact that Brusso failed to conduct any scientific tests, but on the fact that Brusso failed to conduct *enough* scientific tests. For example, the Defendant's argument centers on the fact that Brusso did not conduct any "destructive testing", which, the Defendant points out, even Brusso himself asserts would be "necessary to determine the root cause of the failure with more certainty." Therefore, the facts of the *Clark* case are not applicable to the instant case because Brusso did perform and apply some scientific methodology, i.e., nondestructive testing. In addition, while the Defendant highlights the phrase "necessary to determine the root cause of the failure" as some sort of

11

"admission" by Brusso as to his alleged inadequate testing, the Court finds that the words "with more certainty" are more pertinent here because they demonstrate that the additional testing is not "necessary" per se, but only necessary in order to reach a more definitive conclusion as to the root cause of the failure of the grab bar. The Court notes, once again, that Brusso's decision to use one form of scientific methodology (nondestructive testing) as opposed to another (destructive testing) goes to the expert's credibility, not the admissibility of his testimony.

*3. Common sense opinions*

Third, the Defendant argues that Brusso's opinions regarding the cause of the grab bar failure and the Plaintiff's injuries amount to nothing more than common sense evaluations that provide no value to the jury. The Defendant argues that any lay person could reach the same conclusions as Brusso through their own common sense reasoning alone. Moreover, the Defendant asserts that Brusso, in his deposition, admitted that any lay person could draw the same conclusions as his opinions regarding the grab bar failure by simply looking at the photographs of the grab bar system.

The Plaintiff responds that Brusso's opinions and conclusions as to the failure of the grab bar require engineering expertise. Furthermore, as to the language in Brusso's deposition cited by the Defendant, the Plaintiff states that counsel for the Defendant "merely did what counsel should do with expert testimony–take the scientific testimony and make it understandable for a lay person, specifically and ultimately, a jury." Pl. Resp., at 6.

In support of its common sense argument, the Defendant relies on *Dhillon v. Crown Controls Corp.*, 269 F.3d 865 (7th Cir. 2001), for the proposition that "an expert ... must testify to something more than what is 'obvious to the layperson' in order to be of any particular

12

assistance to the jury." *Id*. at 871 (quoting *Ancho v. Pentek Corp.*, 157 F.3d 512, 519 (7th Cir. 1998)).  In *Dhillon*, the Court excluded expert "biomechanical" testimony that " a leg can fall through an opening and a leg cannot fall through a closed door", finding that it would not assist the trier of fact in understanding the evidence or determining a fact in issue.  *Id.*

The Defendant attempts to apply the *Dhillon* reasoning to two separate passages in Brusso's opinion:

> The upper end of the grab bar has detached from the trailer door and only a small section of the lower end of the grab bar remains fastened to the door, Figure 2.  The attached section of the grab bar and the door panel are bent outward adjacent to the fracture, Figure 3.  The fracture surface on the grab bar section attached to the door is corroded, Figure 3(b).   The fracture surface details are not apparent because of the observed corrosion residues.  It would be necessary to clean the fracture surface to see the fracture details.
> ...
> When Mr. Troutner grabber the bar, the normal load applied to the grab bar caused the upper end of the grab bar to pull away from the door and bend downward under Mr. Troutner's weight.  The stresses applied to the lower end of the grab bar from the large bending moment resulted in the observed bending of the grab bar and subsequent failure.  The cap screws securing the lower end of the grab bar did not pull out of the threaded inserts.  Final failure of the grab bar occurred by ductile overload.  The applied stresses also caused localized deformation, or bulging, of the trailer door at the lower attachment location.

Def. Mot., at 15.  The Defendant asserts that, with regard to the above statements from Brusso, "any layperson could reach the same conclusion[s] if provided the factual history of the occurrence and photographs of the grab bar system and trailer door."  Def. Mot., at 15.  The Court disagrees.  The Court finds that not only do the above passages require a certain degree of expertise and are not "obvious to [a] layperson", *Dhillon*, 269 F.3d at 871 (quoting *Ancho*, 157 F.3d at 519), the above passages in Brusso's written report represent a description of the facts of

13

the incident in this litigation, not Brusso's expert conclusion.  Brusso's expertise as a metallurgical engineer requires the assessment of the facts of the incident in this litigation and then an application of his expertise to the facts in order to determine the root cause of the failure of the grab bar.

The Court further finds that Brusso, in his deposition, did not, as the Defendant suggests, "admit[] his opinions regarding the failure of the grab bar system are such that any lay person could reach the same opinions simply by looking at photographs of the grab bar system."  On the contrary, the questioner asked Brusso whether a layperson "could appreciate", by looking at photographs of the grab bar system, the test of the fastening system to the trailer door.  Brusso responded "[c]orrect"; in other words, Brusso stated that a layperson "could appreciate", or understand[5], the test of the fastening system to the trailer door.  The Court finds that the Defendant, without offering any further evidence, makes an unjustifiable leap from the ability of a juror (here, "layperson") to appreciate the finer points of an expert's opinion to an admission that expert knowledge was not necessary to reach the expert's proffered opinions.  The Court finds that Brusso made no such admission here.

## CONCLUSION

Having considered the Defendant's arguments and bearing in mind the liberal standard set forth in *Daubert*, the Court concludes that Brusso's testimony is sufficiently reliable to be

---

[5]To "appreciate" is "[t]o understand the significance or meaning of."  *Black's Law Dictionary* 110 (8th ed. 2004).

14

admitted.  Accordingly, based on the foregoing, the Court now hereby **DENIES** Defendant's Motion To Bar The Testimony Of James Brusso [DE 53].

SO ORDERED this 5th day of December, 2006.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATE DISTRICT COURT

cc: All counsel of record